## SUPERIOR COURT.

### MARCH 27, 1832.

### BEFORE HOFFMAN, J.

---

THE PRESIDENT, DIRECTORS and COMPANY of the TRADES-
MEN'S BANK, of the city of New York, *against* THOS.
WOODWARD and BARNABAS OSBORN.

In a surety bond, the recital limits and controls the condition.

THIS was an action of debt on bond against the defend-
ants, as sureties of one George B. Starks.

In the month of June, 1823, Starks was appointed, by
the plaintiffs, first book-keeper, and, on that occasion, gave
his bond to them, with the defendants as his sureties, in
the penal sum of $8,000. Prefixed to the condition of this
bond, there was a recital, stating that, at the request of
Starks, the plaintiffs had appointed him first book-keeper,
and that the business of the bank occasionally required the
aid of such first book-keeper in the discharge of other du-
ties there. The condition of the bond then provided as
follows:

I. That Stark should well and faithfully perform the du-
ties assigned to and the trusts reposed in him, as such first
book-keeper, so long as he should continue in that capa-
city.

II. Or, if he should perform any other office, duty or em-ployment, at the request of the president, directors and company, or of any officer of the said bank, then that he should faithfully perform the duties assigned to and trusts reposed in him in such other office, duty or employment.

III. And, also, such other duties as might, from time to time, be assigned to or undertaken by him, in relation to said corporation; and

IV. Make known, to the president and cashier, for the time being, without delay, any fraud, false entry, error or mistake, which he should or might discover or know to have taken place in any book or books belonging to said corporation, or in any transaction or thing relating to the business and affairs of said corporation; and

V. Should faithfully keep the secrets of the said corpo-ration, which might come to his knowledge while in the service of the same.    Then the said obligation to be void, &c.

Starks filled the office of first book-keeper until the 11th July, 1826, when he was promoted to the office of first teller, which he continued to fill until the 17th day of July, in the same year, when the operations of the bank were suspended by an injunction from the court of chancery. This injunction was dissolved, and the bank resumed its business, 18th September, 1826, at which time the duties of the two offices of first teller and first book-keeper were imposed upon Starks, and his salary increased.    He dis-charged the duties of these offices until the 28th Septem-ber, 1830, when he was relieved from the duties of first book-keeper, another person being appointed permanently to that office, and he was then appointed to the office of first teller, which office he continued to fill until the 2d April,

1831, when he retired, on account of impaired health, and shortly afterwards died.

Some time after his resignation it was discovered that he had defrauded the bank of $1,400, in his character and office of first teller.   The false entry, to cover the fraud, being made under date 30th September, 1830, in books to which he had access as first teller, and it appeared that such fraud must have been committed between the 10th June, 1830, and 30th September, 1830, and that everything in the department of the first book-keeper was correct.

Four breaches were assigned in the declaration :

1. That he was first book-keeper from the 20th June, 1823, until 11th July, 1826, and did not faithfully perform, during that period, the trusts reposed in him as first book-keeper, but did, by false entries, &c., defraud, &c.

2. That he was first teller from 11th July, 1826, until 17th July, 1826, and did not faithfully perform, during that period, the trust reposed in him as first teller, but did, by false entries, &c., defraud, &c.

3. That he was first book-keeper and first teller, from 15th September, 1826, until 28th September, 1830, and did not faithfully perform, during that period, the trusts reposed in him as first book-keeper and first teller, but, as such first book-keeper and first teller did, by false entries, &c., defraud, &c.

4. That he was first teller, from 28th September, 1830, until 2d April, 1831, and did not, while he was such first teller, faithfully perform the trusts reposed in him, but did, by means of false entries, &c., defraud, &c.

To this declaration the defendants pleaded *non est factum* and performance.

The bond and the above defalcation having been proved,

*Lord* and *Anthon*, for the defendants, moved a non-suit, and contended that the condition of the bond being larger than the recital, the effect of the recital was to restrain it. That the obligation of the defendants, as sureties, was confined, therefore, to defalcations of Starks in the office of first book-keeper, and in the discharge of such duties as might occasionally devolve on him temporarily while he held such office of first book-keeper. That the fraud, in this case, was committed by him, either while the risk had been greatly increased by adding to the office of first book-keeper, the office of first teller, which enabled him to purloin the funds and conceal such purloining by false entries, or while he filled a totally distinct office, and in a character not contemplated by the bond. They cited, *Lord Arlington* v. *Merrick*, 2 Saund. 414; *Dane* v. *Gridley*, 4 B. & P. 37; *Barker* v. *Packer*, 1 D. & E. 294; *Liv. Water-works* v. *Alkinson*, 6 East, 510; *Pearsall* v. *Summersett*, 4 Taunt. 597; *Hassel* v. *Clark*, 2 M. & S. 363; *Bigelow* v. *Bridge*, 8 Mass. 275; *Commonwealth* v. *Boynton*, 4 Dall. 282; *St. Saviour* v. *Bostock*, 5 B. & P. 175; *Swinson* v. *Cork*, 1 Big. 452; Theob. on Sureties, p. 66; *Miller* v. *Stewart*, 8 Wheaton's, 680; *U. S.* v. *Kirkpatrick*, ib. 720.

*D. B. Ogden* and *Griffen*, for plaintiffs, contended that the fraud, whether committed while Starks held the two offices of first book-keeper and first teller, or while he held that of first teller alone, was fully within the condition of the bond, and that when the recital and the granting part of a deed vary, the granting part controls, and that the case of surety bonds forms no exception to this rule. They cited, 5 Johns. C. C. 23; 1 Pet. 72.

HOFFMAN, J.   This case does not appear to be free from serious doubts.   My prudent course will be to deny the non-suit, and allow a verdict to be taken subject to the opinion of the court, with leave to enter a verdict for defendants.(1)   .

Verdict for plaintiffs accordingly.

(1) In January term, 1836, this case was argued before the whole court, the defendant's counsel relying on the cases they cited at the trial, and the plaintiffs relying on the cases cited by them, and particularly on the case from Peters.   At the argument, Oakley, J., asked why there had not been a demurrer interposed to the breaches deemed too broad for the recital, to which Lord, for defendant, replied that this could not be done, as some of the breaches were good in point of law.   *Sed Vide*, 1 Chitty on Plead. 643.

In February term, 1836, the court decided for the defendants, and the verdict was entered accordingly on the grounds contended for by their counsel.

In *Huntington* v. *Haven*, (5 Johns. C. C. 27,) Chancellor Kent states, with accuracy, the rule of law in relation to the effect of a recital in an ordinary *deed inter partes*, upon the granting part, which will be found to differ entirely from the rule as applied to *surety obligations*.   The recital in the first class of cases, (*deeds inter partes*,) as a general rule, cannot be permitted to control the operation of the deed; this is a well settled rule of construction. There never was a case (he says) in which a recital controlled the plain words of the granting part of a deed.   He confirms his view of the subject, by a reference to the opinion of Lord, C. J.   Holt, in *Bath* v. *Montgern*, (3 Ch. Cas. 101,) who there says, "that the reciting part of a deed is not at all a necessary part, either in law or equity; that it hath no effect or operation when it comes to limit, then the deed is to have its effect, according to what limitations are therein set forth: and the Lord Keeper affirmed what Lord Holt said, observing that the recital, in a deed, is not made the measure of the limitation in it."   *Vide etiam*, Dixon on Title Deeds, 619.   .

In all such deeds the words of the grantor are taken most strongly against himself: hence the rule, above asserted, necessarily follows.

The case is otherwise with the obligation of a surety.   The second class of cases referred to the contract of the surety, being *strictissimi juris*, the words are never pressed beyond their plain import, and the judges are astute in seizing upon every favorable rule of interpretation for his protection.   Hence the recital in such contracts, undertaking to express

The Tradesmen's Bank v. Woodward and Osborn.

the precise intent of the parties, controls the condition or obligation which follows, and does not allow it any operation more extensive than the recital which is its key. The office of the recital in such cases, therefore, is of controlling import: the condition indeed is deemed "a technical version of the recital, and framed with a view to future operation." Hence, in surety obligations, it seems well settled that the recital restrains the condition. Hurleston on Bonds, 33; *Corp. of London Ass., &c.* v. *Bold,* 6 Ad. & Ellis U. S. 514; *Bartmaker* v. *Webb,* 6 Iredell, 57.